## Robert M. Duhaime v. Treasurer, State of Vermont

[636 A.2d 754]

No. 92-316

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 19, 1993

*Oreste V. Valsangiacomo, Jr.,* of *Valsangiacomo, Detora & McQuesten, P.C.,* Barre, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *Robert W. Gagnon,* Senior Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Robert Duhaime, appeals from a declaratory judgment holding that he is not entitled to receive additional retirement benefits from the Vermont Employees Retirement System, 3 V.S.A. §§ 455–495, for financially supporting his stepchild. He argues that 3 V.S.A. § 461(c)(2) requires the Treasurer to pay him an extra ten percent of his "average final compensation" on account of his dependent stepson. He also argues that if he is not entitled to additional compensation under the statute, the statute violates his rights

under the Equal Protection Clause of the United States Constitution and Chapter I, Articles 7 and 9 of the Vermont Constitution. We agree that the statute entitles him to the benefits he seeks and we reverse.

Plaintiff was employed by the Vermont State Police from 1976 to 1983, at which time he began receiving accidental disability retirement compensation pursuant to 3 V.S.A. § 461. Prior to his disability, plaintiff had married Yolande Duhaime. Her biological son, Nathan, lived with his father until 1986, when he moved in with his mother and the plaintiff. In 1989, Ms. Duhaime was granted sole custody of Nathan. The custody order states that Ms. Duhaime is "presently financially able to support Nathan," and it provides no child support from Nathan's biological father, although the father acknowledges that he may have to pay child support in the future. In fact, plaintiff has financially supported Nathan since 1986. He claims Nathan as a dependent for purposes of calculating his income tax liability and his Veterans' Administration disability allotment.

The issue in this appeal centers on whether plaintiff may claim his stepchild, Nathan, as "a dependent child of his" for purposes of calculating his retirement allowance pursuant to 3 V.S.A. § 461(c)(2).* If Nathan is a child who comes within the statutory description, plaintiff is entitled to the extra retirement benefits he seeks. The superior court denied plaintiff additional benefits for the dependent child because plaintiff had no legal obligation to support Nathan. Defendant argues, in addition, that irrespective of plaintiff's obligation to support Nathan, the statute allows additional benefits only for adopted

---

* 3 V.S.A. § 461(c)(2) provides:

(c) [A] group C member, upon accidental disability retirement, shall receive as a minimum an allowance which:

. . . .

(2) If his compensation from the state is subject to social security withholding will, when added to his social security benefit, be equal to fifty percent of his average final compensation plus ten percent of his average final compensation for each dependent child of his, not in excess of three, who has not attained age eighteen or, if a dependent student, has not attained age twenty-three.

or natural children. We consider each ground for denial of additional compensation in turn.

The superior court decision was based on the erroneous principle that a stepparent has no duty to support his or her stepchild. That was the rule at common law, *Borkman v. Commissioner of Social Welfare*, 128 Vt. 561, 565, 268 A.2d 790, 793 (1970), unless the stepparent stood in loco parentis to the stepchild. See *In re Fowler*, 130 Vt. 176, 181, 288 A.2d 463, 467 (1972). In adopting 15 V.S.A. § 296, however, the Legislature changed the common law rule. The critical part of this statute is the last sentence, which states:

> The duty of a stepparent to support a stepchild under this section shall be coextensive with and enforceable according to the same terms as the duty of a natural or adoptive parent . . . including any such duty of support as exists under the common law of this state, for so long as the marital bond creating the step relationship shall continue.

15 V.S.A. § 296. Because of this language, we held recently in *Ainsworth v. Ainsworth*, 154 Vt. 103, 112, 574 A.2d 772, 778 (1990), "that the statute creates a general obligation of support" on stepparents.

Nathan is dependent on plaintiff in fact. Nathan is also legally dependent on plaintiff because of plaintiff's obligation of support. Unless defendant's argument that § 461(c)(2) is limited to natural or adopted children is correct, Nathan's dependency gives plaintiff the right to the additional benefits he seeks.

Defendant's argument is grounded in the statutory requirement that the child be "dependent child of his," which defendant interprets to mean a natural or adopted child "of his," irrespective of dependency. Defendant argues that this is the plain meaning of the statute to which we must adhere. See *McSweeney v. McSweeney*, 159 Vt. 629, 630, 618 A.2d 1332, 1334 (1992) ("Where the meaning of a statute is plain on its face, we will enforce the statute according to its terms."). Further, defendant argues that this is the construction adopted by the Vermont Retirement Board, which administers the retirement system, see 3 V.S.A. § 471(a), and we must defer to its interpretation. See *In re Taft Corners Assocs.*, 160 Vt. 583, 590, 632 A.2d 649, 653 (1993).

We find these arguments unpersuasive. The language of the statute is far from plain. The words "of his," on which defendant puts so much weight, can be taken to mean "child of his," as defendant urges, or "dependent . . . of his," as plaintiff urges. Neither possible meaning, "his child" or "his dependent," is more plain than the other.

Other canons of statutory construction are against defendant's interpretation. The retirement act is remedial legislation that must be construed liberally in favor of the beneficiaries. *Vincent v. Vermont State Retirement Bd.*, 148 Vt. 531, 536, 536 A.2d 925, 929 (1987). Moreover, the obvious intent of the statute is to increase the retiree's benefits to account for minor dependents the retiree must support. See *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990) (primary goal of statutory construction is to implement the intent of the Legislature). It makes no sense for the Legislature to recognize the expenses of some dependents in that category and ignore the expenses of others. See *In re Southview Assocs.*, 153 Vt. 171, 175, 569 A.2d 501, 503 (1989) ("We will avoid a construction that would render the legislation ineffective or irrational."). As the New Hampshire Supreme Court stated when addressing a similar question of determining the amount of workers' compensation benefits: "The benevolent purpose of the . . . statute belies the suggestion that the granting or withholding of compensation benefits was intended to turn on the technical requirement of legal adoption where all of the characteristics of the parent-child relationship are otherwise proven." *MacArthur v. Nashua Corp.*, 493 A.2d 1126, 1129 (N.H. 1985). The Legislature that created plaintiff's obligation to support Nathan as if he were his natural or adopted child could not have intended to deprive him of the income to do so when he could no longer work for the state.

We are also not persuaded that we should defer to the Vermont Retirement Board in these circumstances. Defendant defended this case relying on the common law rule that a stepparent has no duty to support a stepchild. Neither defendant, nor plaintiff, nor the superior court, recognized the relevant statute, 15 V.S.A. § 296, or our decision in *Ainsworth*. We do not know whether the Board would have denied plaintiff's benefits if the Board had been aware of plaintiff's obligation to

support Nathan. Thus, we do not have a definitive interpretation of the statute to which to defer.

Because of our disposition of the statutory claim, it is unnecessary to reach plaintiff's constitutional claims.

*Reversed; judgment is entered for plaintiff.*

**Gibson, J.,** dissenting. Because I believe the majority's holding perpetuates a misreading of the plain language of 15 V.S.A. § 296, I dissent.

The majority predicates its holding that plaintiff has a legal duty to support Nathan on what it terms the "critical part" of 15 V.S.A. § 296. That part is the same part of the statute the Court emphasized in *Ainsworth* in holding "that the statute creates a general obligation of support" on stepparents. *Ainsworth v. Ainsworth,* 154 Vt. 103, 112, 574 A.2d 772, 778 (1990). I believe the evidence does not establish that plaintiff in this case has a legal duty under 15 V.S.A. § 296 to support Nathan, and I would overrule *Ainsworth* insofar as it holds that a general obligation to support stepchildren exists without reference to the specific conditions set forth in § 296.

The majority opinion quotes only a portion of § 296. It omits the first sentence—also a "critical part" of the statute, which must be read in conjunction with the remainder. The full statute reads as follows:

> A stepparent has a duty to support a stepchild *if* they reside in the same household *and if* the financial resources of the natural or adoptive parents are insufficient to provide the child with a reasonable subsistence consistent with decency and health. The duty of a stepparent to support a stepchild *under this section* shall be coextensive with and enforceable according to the same terms as the duty of a natural or adoptive parent to support a natural or adoptive child including any such duty of support as exists under the common law of this state, for so long as the marital bond creating the step relationship shall continue.

15 V.S.A. § 296 (emphasis added).

The statute clearly specifies conditions under which a stepparent has a duty to support a stepchild "under this section": (1) if the stepchild resides in the same household, and (2) if the

natural or adoptive parents cannot provide adequate support. Only when those conditions are met will the duty of a stepparent be "coextensive with and enforceable according to the same terms as the duty of a natural or adoptive parent."*Id.* See *Slocum v. Department of Social Welfare,* 154 Vt. 474, 481, 580 A.2d 951, 954 (1990) ("all language in a statute . . . is inserted for a purpose," and we must "strive where possible to give effect to every word, clause, and sentence").

I do not disagree that the obligation, when imposed, is a general one, but I cannot agree that it necessarily attaches whenever a stepchild lives with a stepparent and is supported by the stepparent. Such an interpretation is a revision of the statute, usurping the "power[] of the legislature to determine public policy." *Payne v. Rozendaal,* 147 Vt. 488, 502, 520 A.2d 586, 594 (1986) (Peck, J., dissenting). The Legislature clearly intended, in writing the statute as it did, that the duty to support a child shall reside first and foremost with the natural or adoptive parents. If they can support the child, even if the child resides in the household of a stepparent, they must do so.

Nor do I disagree with the majority's desire to construe the retirement provisions liberally, or with its conclusion that "[i]t would make no sense for the Legislature to recognize the expenses of some dependents . . . and ignore the expenses of others." The facts of this case, however, do not bring us to this point. In this case, we do not know to what extent the natural father is able to support Nathan, or to what extent the family court intended the natural father to provide support. Where the record is incomplete, as here, it contravenes the intent of § 296 to hold that a stepparent incurs a legal obligation to support a stepchild merely because the child lives with and is supported by the stepparent.

The predicate of the majority's opinion clearly goes against the plain language of 15 V.S.A. § 296. I therefore dissent.

I am authorized to say that Chief Justice Allen joins in this dissent.